CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/28/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
       DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| STACY R.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 6:20cv00029 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### REPORT AND RECOMMENDATION

Plaintiff Stacy R. ("Stacy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB")[3] under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Stacy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate her fibromyalgia. Stacy also alleges that the Appeals Council failed to properly evaluate additional medical records submitted after the ALJ's decision.

I conclude that substantial evidence does not support the Commissioner's evaluation of Stacy's fibromyalgia. Accordingly, I **RECOMMEND GRANTING** Stacy's Motion for

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

[3] In her brief, Stacy mistakenly indicates that she is seeking judicial review of a decision denying her application for Supplemental Security Income ("SSI") benefits as well; however, there is no pending SSI claim in this case.

Summary Judgment in part (Dkt. No. 13) and **DENYING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Stacy failed to demonstrate that she was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s]

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## CLAIM HISTORY

Stacy filed for DIB in August 2016, claiming her disability began on July 20, 2016, due to cervical spine disorder, degenerative disc disease, chronic back pain, numbness and loss of strength in both arms and hands, swollen ankles, morbid obesity, depression, and fibromyalgia.[5] R. 355, 376. Stacy's date last insured was December 31, 2021; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 11, 226; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Stacy's application at the initial and reconsideration levels of administrative review. R. 242–52, 254–66. On May 16, 2018, ALJ Mark A. O'Hara held a hearing to consider Stacy's claim for DIB. R. 214–41. Counsel represented Stacy at the hearing, which included testimony from vocational expert Barry Hensley, Ed. D. On December 26, 2018, the ALJ entered his decision analyzing Stacy's claims under the familiar five-step process[6] and denying her claim for benefits. R. 11–23.

---

[5] Stacy was 45 years old on the alleged disability onset date and 47 years old on the date of the ALJ's decision, making her a younger person under the Act. R. 21, 242.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);

The ALJ found that Stacy was insured at the time of the alleged disability onset and that she suffered from the severe impairments of obesity, degenerative disc disease, status-post lumbar and cervical fusion surgeries, polyarthritis, meniscal tear of the left knee, status-post corrective surgery, Sjogren's syndrome[7], and fibromyalgia.[8] R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. The ALJ specifically considered listing 1.02 (major joint dysfunction), listing 1.04 (disorders of the spine), and listing 14.10 (Sjogren's Syndrome). R. 15–16. The ALJ also noted that, although obesity and fibromyalgia do not have specific listings, he considered obesity in the context of the overall record and considered whether Stacy's fibromyalgia severity equaled the limitations found in any of the listings. R. 16. The ALJ found that, regarding her mental impairments, Stacy's depression was non-severe, and she had no limitations in the areas of understanding, remembering, or applying information and adapting or managing oneself, and mild limitations in the areas of interacting with others, and concentrating, persisting, or maintaining pace. R. 14.

The ALJ concluded that Stacy retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 16. Specifically, Stacy can lift and carry 20 pounds

---

Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] Sjogren's Syndrome is an autoimmune disorder where immune cells attack the glands that produce tears and saliva, and is also associated with rheumatic disorders, such as rheumatoid arthritis. See https://www.ninds.nih.gov/Disorders/All-Disorders/Sj%C3%B6grens-Syndrome-Information-Page

[8] The ALJ also found Stacy's diabetes mellitus, hypertension, hyperlipidemia, obstructive sleep apnea, and episcleritis were non-severe physical impairments. R. 13–14. Likewise, the ALJ found Stacy's depression was non-severe. R. 14.

occasionally and 10 pounds frequently. Id. She can stand and/or walk for four hours and sit for six hours in an eight-hour workday. Id. Stacy can only occasionally balance, stoop, kneel, crouch, climb stairs, and push/pull with her left lower extremity, and can never crawl or climb ladders, ropes, or scaffolds and must avoid concentrated exposure to workplace hazards such as moving machine parts and unprotected heights. Id. The ALJ determined that Stacy is capable of performing her past relevant work as a bookkeeper and finance manager. R. 21. The ALJ also determined that Stacy's RFC equaled that of a full range of sedentary work, and therefore considering her "age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.21." R. 22. Thus, the ALJ determined that Stacy was not disabled. Id. Stacy appealed the ALJ's decision and the Appeals Council denied her request for review on March 10, 2020. R. 1–4.

## ANALYSIS

Stacy alleges that the ALJ did not apply the correct legal standard for assessing her fibromyalgia, including as delineated by the Fourth Circuit in Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 97–98 (4th Cir. 2020).[9] Stacy also alleges that the Appeals Council failed to properly evaluate additional medical records submitted after the ALJ's decision.

### A. Medical History Overview

1. Medical Treatment

Stacy carried diagnoses of degenerative disc disease, polyarthritis, Sjogren's syndrome, fibromyalgia, and obesity. She had neck surgery in July 2016, around her alleged onset date, and arthroscopic left knee surgery in December 2016. R. 576–79, 753. At follow-up visits, Stacy

---

[9] Because the Arakas decision was entered approximately one month after Stacy filed her motion for summary judgment, I entered an order asking the parties to address its applicability, if any, to this case. Stacy filed a supplemental motion arguing that the ALJ did not apply the correct legal standard as set forth in Arakas. Dkt. 18.

5

complained of back, neck, and knee pain, but on physical exam generally had normal strength, full range of motion, intact sensation, and a normal gait. R. 602, 605–08, 683, 753, 865, 868, 880, 908. Stacy also saw rheumatologist Sorina Dancea, M.D. regularly for treatment of her Sjogren's syndrome, fibromyalgia, and osteoarthritis. Stacy reported she was diagnosed with fibromyalgia in 2007 by her primary care provider. R. 978. On examination, Dr. Dancea generally noted she had multiple musculoskeletal tender points, but with normal strength, range of motion, and no focal motor deficits. R. 974, 979–80, 993, 1020.

2. Relevant Medical Opinions

In January 2018, Patricia Hayes, FNP, who provided primary care treatment for Stacy completed a Medical Source Statement. R. 948–58. FNP Hayes indicated that Stacy had restrictions that would preclude competitive work, including frequent unscheduled breaks of more than an hour, multiple manipulative limitations, and an ability to stand, sit, or walk less than two hours. R. 948–49. As support for her opinion regarding Stacy's limitations and impairments, FNP Hayes noted Stacy's chronic pain, degenerative disc disease, fatigue, muscle pain, and fibromyalgia. R. 949. The ALJ gave this opinion little weight. R. 20.

State agency physicians Josephine Cader, M.D. and Bert Spetzler, M.D., reviewed the record in November 2016 and January 2017, respectively, and determined that Stacy was capable of sedentary work, with certain postural and environmental limitations. R. 20, 248–51, 262–65. The ALJ gave these opinions some weight, but found Stacy could lift and carry more weight than the state agency doctors indicated, and thus was capable of a reduced range of light work.[10] In

---

[10] The state agency doctors indicated Stacy could carry ten pounds occasionally and less than ten pounds frequently; the ALJ found she could carry twenty pounds occasionally and ten pounds frequently. R. 20. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. See 20 C.F.R. § 416.967

the alternative, the ALJ also found Stacy's RFC "analogous to that of a full range of sedentary work." R. 22.

### B. Fibromyalgia Analysis

Stacy argues that the ALJ failed to follow the correct legal standard in evaluating her fibromyalgia.[11] Specifically, Stacy states the ALJ "improperly discounted [her] subjective complaints of pain and fatigue" from her fibromyalgia and "based [his] denial solely on the lack of objective medical evidence . . . ." Pl.'s Br. at 2–3, Dkt. 18. The Fourth Circuit stated in Arakas:

> Today, we . . . hold[] that ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease. If considered at all, such evidence—along with consistent trigger-point findings—should be treated as evidence *substantiating* the claimant's impairment. We also reiterate the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms.

983 F.3d at 97–98.

In contradiction to the directive in Arakas, the ALJ here relied on the lack of objective medical evidence to discount Stacy's subjective complaints regarding her fibromyalgia. The ALJ acknowledged Stacy's fibromyalgia diagnosis, along with her other severe impairments, and that she often exhibited tenderness and positive trigger points, but still concluded that "during most of the period, [Stacy] maintained a normal gait, intact strength and sensation, and a full range of

---

[11] Because I am recommending remand due to this allegation of error, I do not address Stacy's other allegation of error, that the Appeals Council failed to properly evaluate additional medical records submitted after the ALJ's decision.

motion. Based on these demonstrations of normal strength and ambulation, [I] find[ Stacy] can perform work at the light exertional level." R. 19.

Stacy's treatment notes indicate she "has been having widespread pain since 2007, when she was diagnosed with fibromyalgia." R. 978. At the hearing, Stacy testified that she "stayed tired and exhausted, but I think that is from the pain, and I also have fibromyalgia." R. 227. She indicated she would rest in her bedroom, sometimes all day, moving from the bed to a chair depending on her pain and what was hurting. Id. Stacy stated that, "depending on the level of pain" she might need help in the shower, and has difficulty manipulating buttons or fasteners due to finger pain. R. 228. On a good day, Stacy might try to dust or straighten for 15 to 20 minutes, and then would need to rest for 45 minutes to an hour. R. 229. She could perform this cycle three or four times, at most. Id.

The ALJ wrote that Stacy "alleged limitations to sitting, stand, walking, and lifting, as well as the need to use an ambulatory aide and lie down to elevate her feet periodically . . . ." R. 19. However, he concluded that Stacy's "allegations are not entirely consistent with the medical findings" and discounted Stacy's subjective complaints stating "the medical record shows that [Stacy] usually maintained a normal (an independent) gait, full strength, a generally intact range of motion, negative straight leg raise testing, and no ongoing lower extremity edema." R. 19. Likewise, the ALJ discounted FNP Hayes opinion that that Stacy would need frequent unscheduled breaks, miss work more than three times a week, and had significant sitting, standing, lifting, and postural limitations on the grounds that FNP Hayes "own treatment notes suggest generally intact physical functioning" and the opinion "is based primarily upon [Stacy's] reported symptoms and limitations, and not upon objective findings and diagnostic test results." R. 20. While FNP Hayes is not a treating doctor, and thus the treating physician rule

8

does not apply, the ALJ, who refers to her as Stacy's "primary care provider" discounts FNP's opinion for precisely the reasons the Fourth Circuit warned against, a lack of objective findings supporting Stacy's subjective complaints. Arakas, 983 F.3d at 95–96 (finding that the ALJ disregarded precedent and the Social Security Agency's policies by "improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating her statements"). The Fourth Circuit in Arakas carefully emphasized that a claimant with fibromyalgia, where symptoms are entirely subjective with the exception of trigger point evidence, is entitled to rely exclusively on subjective evidence to prove her symptoms prevent her from working, and when an ALJ discredited her complaints "based on the lack of objective evidence corroborating them . . . he improperly increased her burden of proof . . . ." Arakas, 983 F. 3d at 96.

    I recognize that Stacy had other severe impairments besides fibromyalgia, including diseases such as degenerative disc disease and Sjogren's Syndrome, which can be corroborated with objective evidence. Indeed, the plaintiff in Arakas also suffered from degenerative disc disease and carpal tunnel syndrome, in addition to fibromyalgia. Arakas, 983 F.3d at 92 (noting that while "fibromyalgia, degenerative disc disease, and carpal tunnel syndrome have been the primary sources of Arakas's symptoms" she also suffered from other pain-causing conditions, including bursitis and internal knee derangement). Here, the ALJ makes no attempt to distinguish between Stacy's fibromyalgia and her other impairments in his discussion of her symptoms or allegations. Thus, as written, the ALJ improperly discounted Stacy's subjective evidence regarding her pain and fatigue from fibromyalgia based on a lack of objective evidence. Arakas, 983 F. 3d at 96 (noting that physical examinations of fibromyalgia patients "will usually yield

9

normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions") (quotations omitted).

The ALJ here also considered Stacy's daily activities, finding they "contradict many of her allegations." R. 19. The ALJ wrote:

> [Stacy] admitted she could maintain several aspects of her personal care, perform light housework, prepare simple meals, help with the laundry, watch television, use a computer, drive a car, go shopping (at least earlier in the period), go on rides with her husband, go to the YMCA, and keep up with family members on the telephone. These admitted activities of daily living suggest an ability to perform a reduced range of light work and directly contradict [Stacy's] allegation that she can no longer maintain a full work schedule.

R. 19–20. While the ALJ listed the activities Stacy "admitted to," he failed to consider the limited extent to which she performed them, including how pain limited her activities.[12] For example, at the hearing, she testified she could clean only on her good days, and only for 15 minutes at a time, and could no longer go to the grocery store. R. 229–30. Further, even in the Function Report dated October 2016, cited to by the ALJ, Stacy indicates she fixes mostly frozen meals, had to shop with her husband's assistance because she cannot lift over ten pounds or keep a firm grasp on items, talks on the phone to her family only one or two times a week, and uses an ambulatory device for assistance when walking.[13] R. 402–409. At the hearing she testified she

---

[12] The ALJ did list some of Stacy's allegations regarding her limitations, including needing to elevate her feet, only being able to lift ten pounds, and relying on her husband and some for care and transportation elsewhere in the opinion. R. 17. However, again, except for noting a lack of objective medical evidence, the ALJ never explains why he discounts Stacy's allegations.

[13] Stacy testified that she had been prescribed a cane by Dr. Caprise, but she transitioned to a walking stick, because it proved less painful for her arm. R. 231–233. Stacy testified that she used the walking stick for balance and walking, both in and out of the house, that it "pretty well goes where I go." R. 231. The ALJ concluded that "there was no evidence that ongoing use of an assistive device has been medically necessary after recovering from knee surgery and [Stacy] has not been noted by providers as consistently using an assistive device." R. 19. However contrary to the ALJ's conclusion, treatment notes from her providers do indicate she used a cane, including a September 2016 note stating "gait stable with cane" (R. 602), and FNP Hayes indication in her January 2018 opinion that Stacy has a "medically necessary" assistive device used for walking. R. 949.

leaves the house only every couple of weeks, "just to ride around for a bit with her husband" or sit outside. R. 230.

"An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). This is because "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities . . . ." Arakas, 983 F.3d at 101. Problematically, the ALJ here did not explain how the activities of daily living showed Stacy could sustain a full-time job. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017); Arakas, 983 F.3d at 100. Further, in Arakas, the Fourth Circuit made clear that, when considering the impairment of fibromyalgia, "ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." Id. at 97.

The Commissioner seems to argue that because Stacy did not bring up fibromyalgia as a primary issue in her initial brief, "Arakas, is therefore inapplicable." D.'s Supp. Br. at 2, Dkt. 19. However, I specifically asked both parties to discuss Stacy's fibromyalgia and the potential impact of the Fourth Circuit's decision in Arakas on this case in my Order dated February 21, 2021. Dkt. 17. Stacy's supplemental brief contends Arakas applies and discusses the ALJ's analysis of Stacy's fibromyalgia at length. The Commissioner simply does not respond to these arguments, instead choosing to contend that Stacy's musculoskeletal conditions were her "primary and most significant impairments." D.'s Br. at 2, Dkt. 19. However, whether Stacy's fibromyalgia was her "primary" or "most significant impairment" is a distinction without a difference in this case. Stacy was diagnosed with fibromyalgia, had regular treatment for fibromyalgia, complained of pain related to fibromyalgia, and even the ALJ determined it to be a

11

severe impairment. Under those circumstances, the ALJ was not permitted to rely on the lack of objective evidence to discount Stacy's subjective complaints of her fibromyalgia symptoms. Arakas, 983 F.3d at 97–98 (noting that "objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease").

Because I find that remand is warranted based on the ALJ's reliance on a lack of objective evidence to discount Stacy's subjective allegations, Stacy's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** defendant's motion for summary judgment, **GRANTING IN PART** plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: July 28, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge